HALL ET AL. v. UNITED STATES.

1. The twenty-fifth section of the act of June 30, 1864 (13 Stat. 231), authorizes
   the Secretary of the Treasury to make, in his discretion, just and reason-
   able allowances to collectors of internal revenue, in addition to their sal-
   aries, commissions, and certain necessary charges. A claim for such
   allowances, unless it be sanctioned by him, cannot be admitted by the ac-
   counting officers of the treasury.
2. In a suit on the official bond of a collector of internal revenue to recover a
   balance found to be due from him to the United States on a settlement of
   his accounts by the accounting officers; items of set-off for his extra ser-
   vices and expenses were properly excluded.

ERROR to the Circuit Court of the United States for the
District of Minnesota.

Argued by *Mr. Assistant Attorney-General Edwin B. Smith*
for defendants, and submitted on printed arguments by *H. J.
Horn* for plaintiffs.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Fifteen hundred dollars per annum are allowed to collectors
of internal revenue as salary for their services and that of their
deputies, to be paid quarterly. Commissions, in addition to
salary, are also allowed to such officers, to be computed upon
the amounts by them respectively collected, paid over, and ac-
counted for, under the instructions of the Treasury Depart-
ment, as follows: Three per cent upon the first $100,000; one
per centum upon all sums above $100,000, and not exceeding
$400,000; and one-half of one per centum on all sums above
$400,000. Such an officer may also keep and render to the
proper officers of the treasury an account of his necessary and
reasonable charges for stationery and blank-books used in the
performance of his official duties, and for postage actually paid
on letters and documents received or sent, and exclusively re-
lating to official business; and, if the account is approved by
the proper accounting officers, the collector is entitled to be
paid for the same: but the provision is that no such account
shall be approved, unless it shall state the date and the particu-
lar items of every such expenditure, and shall be verified by
the oath or affirmation of the collector.

Two provisos are annexed to those enactments: (1.) That the

salary and commissions of no collector, exclusive of stationery, blank-books, and postage, shall exceed $10,000 in the aggregate, nor more than $5,000, exclusive of the expenses for rent, stationery, blank-books, and postage, and pay of deputies and clerks, to which such collector is actually and necessarily subjected in the administration of his office. (2.) That the Secretary of the Treasury be authorized to make such further allowances from time to time, as may be reasonable, in cases in which, from the territorial extent of the district, or from the amount of internal duties collected, or from other circumstances, it may seem just to make such allowances. 13 Stat. 231.

Sufficient appears to show that the principal defendant was duly appointed a collector of internal revenue under the act of Congress in that case made and provided, and that the foundation of the suit is the official bond given by the appointee for the faithful discharge of the duties of the office. Breaches of the conditions of the bond having been committed, as alleged, the United States commenced an action of debt in the District Court against the principal and his sureties, claiming the penalties of the bond. Service was made; and the defendants appeared, and pleaded (1.) *non est factum;* (2.) performance; (3.) set-off in the sum of $8,203.06 for money before that time advanced, paid, laid out, and expended by the defendant to and for the use of the plaintiffs, and at their instance, for the work and labor of the defendant and his servants and deputies, done and performed by him, as such collector, for the plaintiffs, and at their instance and request.

Claim is also made for the same sum in the same plea, upon the ground that it was due and owing to the defendant from the plaintiffs for commissions, expenses, and charges for extra services of himself and his servants, done and performed at the special instance and request of the plaintiffs.

Issue was joined by the plaintiffs upon the first plea; and to the second the plaintiffs reply, and deny that the defendant has well and truly performed the conditions of the writing obligatory, and assign the following breaches: (1.) That he has not accounted for and paid over to the United States all the public moneys which came into his hands, in compliance with the orders and regulations of the Secretary of the Treas-

ury.   (2.) That he did not faithfully execute and perform all the duties of his office, as more fully set forth in the replication.

Both parties, having waived a trial by jury, went to trial before the court without a jury; and the finding and judgment were for the plaintiffs, in the sum of $11,517.63. Exceptions were filed by the defendants; and they sued out a writ of error, and removed the case into the Circuit Court.

Due settlement of the collector's accounts had been made by the accounting officers of the treasury; and the plaintiffs, to support the issues on their part, introduced the certified transcript of the same, to which the defendants objected: but the court overruled the objection, and admitted the evidence; and the defendants excepted. Said transcript included the statement of differences, and showed that the sum of $20,120 was the balance due from the collector.

Collections, it seems, had been made by the officer, for the preceding year, amounting to $77,702.08; and it did not appear that he had been paid during that period any extra allowance above his salary and commissions, nor that any of the charges claimed as set-off had been credited in the settlement of his accounts. Apart from that, it was admitted by the plaintiffs that the defendants had paid into court the sum of $11,435.17, which is to be deducted from the balance found due from the defendants by the accounting officers of the treasury.

Set-offs were claimed by the defendants, as follows: (1.) $5,010 paid by the collector, during the summer and fall of 1866, to sixteen deputy-collectors employed by him during that period in his district. (2.) $648 paid for the hire of clerks in his office during the quarter ending Sept. 30 of the same year. (3.) $1,100 paid for hire of clerks in making out his accounts and returns during that and the succeeding year.

Nothing being alleged to the contrary, it will be assumed that those several claims had been duly presented to the proper officers of the treasury, and that they had been finally disallowed. They were separately offered in evidence at the trial; and the ruling of the court in each instance was, that the same was properly rejected by the accounting officers of the treasury. Seasonable exception to the ruling of the court was taken by

the defendants. Appearance was entered by each party in the Circuit Court, and they were both there heard; and the Circuit Court affirmed the judgment of the District Court, and the defendants sued out the present writ of error.

Errors have not been assigned, as required by the rules of the court; but the course of the argument, as exhibited in the printed brief, warrants the conclusion that the only errors relied on are the rulings of the District Court, that the accounts filed in set-off were properly rejected by the accounting officers of the treasury. Defendant litigants had no right to file accounts in set-off at common law; nor did they ever have that right until the passage of the statute of 2 Geo. II., ch. 24, sect. 4, which enacted, in substance and effect, that, where there were mutual debts between the plaintiff and the defendant, one debt may be set against the other, and that such matter may be given in evidence under the general issue, or may be pleaded in bar, so that notice shall be given of the sum or debt intended to be offered in evidence. Chit. on Contr. 948.

Questions of the kind, where the United States are plaintiffs, must be determined wholly by the acts of Congress, as the local laws have no application in such cases. *United States* v. *Eckford*, 6 Wall. 490; *United States* v. *Robeson*, 9 Pet. 324; Conklin, Treat. 127.

Judgment in such suits is required to be rendered at the return term, unless the defendant shall, in open court, make oath or affirmation that he is equitably entitled to credits which had not been, previous to the commencement of the suit, submitted to the consideration of the accounting officers of the treasury and rejected, and specifying each particular claim so rejected in the affidavit. 1 Stat. 515: *United States* v. *Giles*, 9 Cranch, 236; 5 Stat. 83.

Sect. 4 of the same act provides, that, in suits between the United States and individuals, no claim for a credit shall be admitted at the trial, except such as shall appear to have been submitted to the accounting officers of the treasury for their examination, and to have been by them disallowed, unless it shall appear that the defendant, at the time of the trial, is in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit

at the treasury by absence from the United States, or some unavoidable accident.

Claims for credit in suits against persons indebted to the United States, if it appears that the claim had previously been presented to the accounting officers of the treasury for their examination, and had been by them disallowed in whole or in part, may be admitted upon the trial of the suit; but it can only be admitted as a claim for credit, and must be proved to be just and legal before it can be allowed. Equitable claims for credit, if falling within the latter clause of the fourth section of that act, may be admitted at the trial of such a suit, though never presented to and disallowed at the treasury; but the presentation of such a claim will amount to nothing, unless it is proved that the same is justly due to the claimant.

Due returns, it seems, were made by the collect. It is not questioned that his accounts were regularly settled by the accounting officers of the treasury; nor is it suggested that due credit was not given to him for every thing which he could properly claim, except for the extra services and expenses charged in the accounts filed in set-off; and it appears that those accounts were duly presented to the accounting officers of the treasury, and were by them rejected before the suit was instituted. When the claims were offered, the court admitted the evidence; and the only complaint is, that the court ruled that the claims were properly rejected by the accounting officers of the treasury, which is the only question presented for decision.

Independent of the second proviso to the section defining the compensation to be allowed to such collectors, it would be clear beyond every doubt that no claim of the kind could be allowed by any court, as appears from the acts of Congress upon the subject and the decisions of this court. Legislation upon the subject commenced with respect to collectors of the customs, but was ultimately extended to all executive officers with fixed salaries, or whose compensation was prescribed by law. Sect. 18 of the act of the 7th of May, 1822, provided that no collector, surveyor, or naval officer shall ever receive more than. $400 annually, exclusive of his compensation as such officer, and the fines and forfeitures allowed by law for any service he may render in any other office or capacity. 3 Stat. 696.

Prior to that, the settled practice and usage were to require collectors to superintend lights and light-houses in their districts, and to disburse money for the revenue-cutter service. Services of the kind were charged as extra services, and extra compensation was in many cases allowed for such service, until Congress interfered, and by that act gave such officers a fixed compensation, subject to the provision that they should never receive more than $400, exclusive of the fixed compensation, and their due proportion of fines, penalties, and forfeitures. Officers not named in that act also received fixed salaries; and they, whenever they performed extra service under the direction of the head of a department, claimed extra compensation. Claims of the kind were in some instances disallowed; and in certain cases, where litigation ensued, it was decided by this court that such claims were a proper set-off to the money demands of the United States. *Miner* v. *United States*, 15 Pet. 423; *Gratiot* v. *United States*, id. 336; *United States* v. *Ripley*, 7 id. 18.

Litigations of the kind became frequent; and Congress again interfered, and provided that no officer in any branch of the public service, or any other person whose salary or whose pay or emoluments is or are fixed by law and regulations, shall receive any extra allowance or compensation, in any form whatever, for the disbursement of public money or the performance of any other service, unless the said extra allowance or compensation be authorized by law. 5 Stat. 349.

Since then many other acts of Congress have been passed upon the subject, of which one more only will be reproduced. Like the preceding act, it provides that no officer in any branch of the public service, or any other person whose salary, pay, or emoluments is or are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same shall be authorized by law; and the appropriation therefor is explicitly set forth that it is for such additional pay, extra allowance, or compensation. 5 Stat. 510; 9 id. 297, 365, 367, 504, 542, 543, 629; 10 id. 97–100, 119, 12..

Compensation for extra services, where no certain sum is

fixed by law, cannot be allowed by the head of a department to any officer who has by law a fixed or certain compensation for his services in the office he holds, unless such head of a department is thereto authorized by an act of Congress; nor can any compensation for extra services be allowed by the court or jury as a set-off, in a suit brought by the United States against any officer for public money in his hands, unless it appears that the head of the department was authorized by an act of Congress to appoint an agent to perform the extra service, that the compensation to be paid for the service was fixed by law, that the service to be performed had respect to matters wholly outside of the duties appertaining to the office held by the agent, and that the money to pay for the extra services had been appropriated by Congress. *Converse* v. *United States*, 21 How. 470.

None of the conditions precedent suggested existed in the case before the court; and it follows that no such allowance could have been made by the accounting officers of the treasury in settling the accounts of the principal defendant, unless the same had been previously approved by the Secretary of the Treasury, under the second proviso in the twenty-fifth section of the act prescribing the compensation to be allowed to the collectors of internal revenue.   13 Stat. 232.

Authority is there given to the Secretary of the Treasury to make such further allowances to such collectors, from time to time, as may be reasonable; but the power to be exercised in that behalf is one vested in his discretion, both as to time and amount.   He may make an allowance one year, and refuse it the next, or he may never make it at all, as to him may seem just and reasonable.   No appeal lies from his decision in that regard, either to the accounting officers of the treasury or to the courts.   Instead of that his decision is final, unless reversed by Congress.                                *Judgment affirmed.*